● ORIGINAL ●

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL E. GOSS, JR., : | |
| Plaintiff : | |
| v. : | No. 1:CV-00-1069 |
|  : | (JUDGE RAMBO) |
| WILLIAM F. WARD, et al., : | |
| Defendants : | |

FILED
MAR 19 2001
PER
HARRISBURG, PA
DEPUTY CLERK

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**PROCEDURAL HISTORY**

This is a civil action for declaratory and injunctive relief brought by Russell E. Goss pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 (§1983). Goss was, at the time he filed his complaint, a *pro se* inmate at the State Correctional Institution at Rockview (SCI-Rockview). He alleged that he was denied parole on the basis of his race in violation of the Fourteenth Amendment's equal protection and due process clauses. Goss is now at SCI-Frackville. The defendants are William Ward, Chairman of the Board of Probation and Parole, Gary Lucht, Barbara Descher, Richard Kipp, Benjamin Martinez, Nicholas Muller, Michael Webster, and Sean Ryan, who are all members of the Pennsylvania Board of Probation and Parole (Board). Goss has also named the Board as a defendant, at least in the caption of his complaint.

Goss filed a complaint and defendants answered it on October 3, 2000. Discovery ensued. On March 6, 2001, defendants filed a motion for summary judgment. This brief is filed in support of defendants' motion for summary judgment.

## STATEMENT OF FACTS

Goss was convicted of multiple counts of rape and other sexual assaults. SMF[1], ¶¶ 10-11. He was sentenced to a term of imprisonment of not less than seven and a half (7½) years and not more than fifteen (15) years. SMF, ¶10. Goss' minimum sentence expired on July 9, 1999 and his maximum sentence will expire on January 8, 2007. SMF, ¶13. Following the expiration of his minimum sentence, Goss became eligible for parole. *See* the Act of May 28, 1913, P.L. 363, §1 (61 P.S. §315). The Board has decided thus far not to parole Goss but his race was not a factor in those decisions. SMF, ¶15.

Goss alleges that black inmates who participated in the sex offenders program at SCI-Rockview were far less likely to be granted parole than similarly situated white inmates. Complaint, ¶¶ 8-10. The Board's records do show that more white sex offenders who participated in the sex offender treatment program at SCI-Rockview were paroled than black sex offenders who participated in the same program. SMF, ¶¶ 6-7, 22-24. The records also show that the number of white sex offenders participating in the program was greater than the number of black sex offenders doing so. SMF, ¶¶ 20, 28, 29. The number of black and white inmates receiving parole is roughly proportionate to the number of black and white inmates who have participated in the sex offender treatment program at SCI-Rockview. SMF, ¶¶ 24, 28, 29.

According to Board policy, race is not a factor in determining parole eligibility. SMF, ¶9. Rather, the Board reviews such factors as the severity of the offense, the applicant's adjustment to incarceration, his danger to society if released on parole, his acceptance of

---

[1]SMF refers to the Statement of Undisputed Material Facts filed on March 6, 2001 in support of the motion for summary judgment.

-2-

responsibility for his actions, his success in receiving treatment in prison, and his ability to control anger and stress. SMF, ¶10.

**QUESTIONS PRESENTED**

I. Whether the Board is Entitled to Summary Judgment Because the Suit is Barred by the Eleventh Amendment to the Constitution?

II. Whether Plaintiff Can Demonstrate a Viable Claim of Racial Discrimination in Violation of the Equal Protection and Due Process Clauses?

III. Whether the Defendants are Entitled to Qualified Immunity?

**ARGUMENT**

**I. THE BOARD IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE SUIT IS BARRED BY THE ELEVENTH AMENDMENT TO THE CONSTITUTION.**

Although the Board of Probation and Parole is not mentioned in the body of the complaint, it is mentioned in the caption. Fur purposes of this brief, it will be assumed that Goss intends that the Board be a party. Judgment should be entered in favor of the Board because claims against Commonwealth agencies are barred by the Eleventh Amendment.

The United States Supreme Court consistently has interpreted the Eleventh Amendment to preclude suits against a state or state agency in federal court by citizens of that state or other states. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). While a state may consent to suit against it in federal court, thereby waiving its immunity, Pennsylvania has not done so. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (pursuant

to 42 Pa.C.S. §8521(b), Pennsylvania has "specifically withheld consent" to be sued in federal court).

Even if the Eleventh Amendment were not a bar, a civil rights claim could not be maintained against a state agency such as the Board because it is not a "person" amenable to suit under the Civil Rights Act. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Thus, Goss could not sue the Board for alleged violations of his violations of his constitutional rights. *Id.* In the absence of consent, therefore, a suit against the Board is proscribed by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 98.

Therefore, judgment should be entered in favor of the Board.

## II. GOSS CANNOT SHOW A VIABLE CLAIM OF RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES.

Goss was not denied parole because of his race, he was denied parole because the Board, in its discretion, decided that his criminal history and his behavior in prison did not justify a parole at this time. *See* SMF, ¶¶ 10, 15. Goss' criminal history includes horrible crimes over a lengthy period against a child. He began sexually molesting his victim when she was only ten years old and before long he was having vaginal and anal sexual intercourse with her and forcing her to have oral sex with him. SMF, ¶11. This behavior continued until Goss' arrest, when the victim was fifteen years old. *Id.* In his parole denial, the Board decided that "following an interview and review of [plaintiff's] file, the [Board] has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved from [plaintiff's] release on parole." SMF, ¶30.

-4-

Goss would have the burden of proof at trial, and so he must demonstrate the elements of a viable claim of racial discrimination in order to defeat defendants' motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Goss' claim of racial discrimination will only succeed if he can prove that defendants intentionally discriminated against him because of his race. *Stewart v. Rutgers, The State University*, 120 F.3d 426, 431 (3d Cir. 1997). The undisputed material facts, however, reveal legitimate non-discriminatory reasons for the denial of Goss' parole application. SMF, ¶¶ 9-12. Accordingly, he cannot present a viable claim of racial discrimination, and, therefore, defendants' motion for summary judgment should be granted.

Goss' premise is that defendants paroled white sex offenders and declined to parole black sex offenders such as him on the basis of their race, thereby violating the black inmates' right to equal protection of the law. Complaint, ¶7. Goss points to a claimed higher number of parole decisions in favor of white sex offenders as proof of racial discrimination. Complaint, ¶¶ 8-9. The first problem with Goss' case is that he significantly undercounts the number of black sex offenders who were paroled during the time frame identified. There were twenty-nine (29) rather than the sixteen (16) he lists. *See* Exhibit A to Ward Declaration. Second, Goss' claim fails to take into account that there are more whites in the sex offender program than non-whites. SMF, ¶¶ 20, 28, 29. The larger number of paroles of white sex offenders is attributable not to racial discrimination, but to the proportionately larger number of white inmates who have undergone sex offender therapy. *See* SMF, ¶¶ 24, 28. One would expect that, based on the statistics, more white sex offenders receiving treatment at SCI-Rockview would mean more white sex offenders being paroled after receiving treatment there.

Goss also overlooks defendants' policy of examining all relevant factors in each unique application for parole. The Court in *Rowe v. Cuyler*, 534 F.Supp. 297, 301 (E.D.Pa. 1982),

*aff'd*, 696 F.2d 985 (3d Cir. 1982), noted that it is "difficult to believe that any two prisoners could ever be 'similarly situated for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." Goss' comparison of the parole decisions for white and black sex offenders simply provides no evidence of discriminatory conduct by the defendants. The defendants have followed racially neutral procedures to grant and deny parole, and they have not violated Goss' rights under the equal protection clause. *See* SMF, ¶¶ 8-9.

Goss also alleges that defendants have violated his constitutional right to due process of law. Complaint, ¶ 7. Violations of substantive due process rights traditionally entail constitutionally-protected rights. Goss, however, has no constitutionally based right to parole under either the United States Constitution, *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 422 U.S. 1 (1979) or under Pennsylvania law, *Rogers v. Pennsylvania Bd. of Probation and Parole*, 724 A.2d 319, 322 (Pa. 1999). Thus, he cannot claim a deprivation of life, liberty, or property without due process of law.

The Third Circuit has recognized claims for due process violations that involved no fundamental constitutional rights, but the validity of this holding may be questionable. In *Block v. Potter*, 631 F.2d 233 (3d Cir. 1980), the court held that although inmates have no fundamental right to parole, they will have a viable substantive due process claim if they are denied parole for arbitrary or capricious reasons, such as the race of the inmate. The Supreme Court has never applied substantive due process in the absence of a constitutionally-protected interest in life or liberty. The Third Circuit has commented that "not only do courts of appeals in other circuits disagree with *Block*, but more recent decisions by this Court suggest *Block* may be obsolete." *Jubilee v. Horn*, No. 97-1755, slip op. at 1 (3d Cir, March 26, 1998) (copy attached). It is uncertain, therefore, whether

an inmate may claim a substantive due process violation without a constitutionally-protected interest in parole.

Even if the *Block* holding is reliable, defendants' decision not to parole Goss passes constitutional muster. Defendants consider the unique circumstances of every inmate before deciding to grant parole. SMF, ¶9. Aspects of Goss' case that likely affected the outcome of his application for parole include the nature of his crimes, duration of his sentence, his adjustment in prison, recommendations from the Department of Corrections, interviews with Board representatives, his progress in the sex offender program, and his psychological evaluation. *Id.* Significantly, Goss has not asserted that the Department of Corrections recommended him for parole. The race of an inmate is never a factor in parole decisions. SMF, ¶¶ 8-9. Defendants never considered impermissible criteria in their evaluations of Goss, and the undisputed facts do not show an arbitrary or capricious reason for his parole denial. *See* SMF, ¶¶ 9-15.

Accordingly, Goss cannot present a viable claim of racial discrimination in violation of the equal protection or due process clauses. As a result, the Court should enter judgment in favor of the defendants.

### III. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Because defendants reasonably believed their actions were legal, they are entitled to judgment as a matter of law. Government officials performing discretionary functions generally are shielded from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether a constitutional right has been

clearly established is purely a question of law and may be decided even before the commencement of discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Sharrar v. Felsing*, 128 F.3d 810, 827 (3d Cir. 1997) (whether the plaintiff alleges a violation of a clearly-established constitutional right is a "threshold question that should be decided expeditiously . . .").

As explained in Argument II, inmates have no constitutionally-protected right to parole, and the decision to grant parole is completely in the discretion of defendants. *Greenholtz*, 422 U.S. 1; *Rogers*, 724 A.2d at 322. Defendants decided not to parole Goss after considering all of the unique aspects of his case, including his molestation of a child beginning when she was ten. SMF, ¶11. Indeed, it was quite reasonable to decide not to parole Goss in light of his criminal convictions. Nothing indicates that race was a factor in his parole consideration. SMF, ¶14. Defendants accordingly should be immune from suit regarding this parole decision because Goss' rights were not violated and their actions were reasonable.

## CONCLUSION

For the above-stated reasons, judgment should be entered in favor of defendants and against the plaintiff.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

BY: _____
**DANIEL J. DOYLE**
**Senior Deputy Attorney General**
**I.D. No. 54855**

**Office of Attorney General**
**Litigation Section**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-2944**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

DATE: March 19, 2001

NOT-FOR-PUBLICATION

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1755

DENNIS JUBILEE

v.

MARTIN HORN, COMMISSIONER OF DEPARTMENT OF CORRECTIONS;
DONALD VAUGHN, SUPT. AT S.C.I. GRATERFORD;
DAVID DEGUGLIAMO, DEPUTY SUPT. OF TREATMENT;
WILLIAM CONRAD, UNIT MANAGER at S.C.I.G.;
ADRIANE WILLIAMS, COUNSELOR; DORTHA DENNIS, CORR.
RECORDS SPEC.; THOMAS STACHELEK, DEPUTY SUPT.
OF TREATMENT; RONALD WILCHAKY, HEAD PAROLE REP.
S.C.I.G.; MURIEL KLUGE PAROLE REP.;
WILLIAM WOODSON, PAROLE REP.; BOXER, DR.

Dennis D. Jubilee,

Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 96-cv-03818)
District Judge: Honorable J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
MARCH 26, 1998

Before: STAPLETON, COWEN, AND RENDELL,
Circuit Judges.

(Filed APR 09 1998 )

## OPINION

**PER CURIAM**

Dennis Jubilee appeals from the district court's order granting the defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on grounds of qualified immunity. We affirm.

Mr. Jubilee filed a section 1983 action challenging the procedures pertaining to his parole hearing; he alleges violations of the Due Process and Equal Protection Clauses. Although we substantially agree with the district court's reason for granting the defendants' motion with respect to Mr. Jubilee's Equal Protection claim, we find his Due Process claim meritless for somewhat different reasons. In *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980), we held that even if a state statute does not create a liberty interest in parole release, "once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." The district court found that while *Block* is still good law in this Circuit, that decision nevertheless does not "clearly establish," as required by *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the constitutional rights involved: not only do courts of appeals in other circuits disagree with *Block*, but more recent decisions by this Court suggest that *Block* may be obsolete.

We need not decide whether *Block* "clearly established" the constitutional rights invoked in that opinion or has been rendered obsolete, because Mr. Jubilee's complaint

does not fall within the scope of *Block*. The thrust of his complaint is procedural: he contends that the proper parole procedures were neither adhered to nor fairly applied, and that the proceedings were purposefully delayed. He also contends that reviewing him as a violent offender and parole violator amounts to double jeopardy and that "erroneous and incorrect information" was supplied by the prison to the Parole Board. (He does not explain what the information in question is or what role it played in the Parole Board's decision.)

In *Block*, however, it was the parole board's decision itself (denying parole expressly on the basis of Block's race and socio-economic background) that violated Block's right to due process, not the underlying procedures. Mr. Jubilee, by contrast, was denied parole because of substance abuse, his habitual offender status, an assaultive offense, his high assaultive behavior potential, the injury to his victim, and his need for treatment, all of which are legitimate reasons.

It could be argued that the reasoning in *Block* implies that improper procedures related to parole proceedings can also violate the Due Process Clause. That question was not before us in *Block*, however, so our holding did not encompass it; nor have we had occasion to address that question in a subsequent opinion. Moreover, other courts of appeals have held that where (as here) there is no constitutionally protected liberty interest in parole, prisoners may not attack state parole review procedures on either procedural or substantive due process grounds. *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *O'Kelly v. Snow*, 53 F.3d 319, 322 (11th Cir. 1995) (same); *Orellana v.*

*Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (prisoner alleging that the parole board relied on admittedly false information); *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (defendants immune in § 1983 action attacking a parole decision on procedural grounds and for using improper criteria).

For these reasons, we cannot say that the Due Process rights Mr. Jubilee asserts are "clearly established" and, thus, that "a reasonable public official [in the defendants' position] would know that his or her *specific conduct* violated clearly established rights," *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996) (emphasis in original). Even if those rights were clearly established, "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience.'" *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (citation omitted). The facts alleged by Mr. Jubilee do not meet that standard.

Accordingly the judgment of the district court is affirmed. Mr. Jubilee's "motion for judicial notice" is denied.

_____

TO THE CLERK:

    Please file the foregoing opinion.

                                                _____
                                                Circuit Judge

## CERTIFICATE OF SERVICE

I, **DANIEL J. DOYLE**, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on March 19, 2001, I caused to be served a copy of the foregoing document entitled **Brief in Support of Defendants' Motion for Summary Judgment**, by depositing same in the United States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania, upon the following:

Russell Goss, Jr., CD-1749
SCI-Frackville
1111 Altamont Boulevard
Frackville, PA 17931-2699

**DANIEL J. DOYLE**
**Senior Deputy Attorney General**
**I.D. No. 54855**